## McCarty v. McCarty

*T. Max Hall,* for plaintiff
*Ambrose Campana,* for defendant.

SMITH, *J.,* February 28, 1984—Mark S. McCarty has filed a petition to terminate his responsibility to pay alimony to his former wife, respondent, on his allegation that she entered into cohabitation with a member of the opposite sex. The court is called upon to determine whether respondent's conduct constitutes cohabitation, such that it falls within the prohibition found in the Divorce Code. Based upon the testimony presented at the hearing held January 3, 1984, the court makes the following

## FINDINGS OF FACT

1. Respondent, Deborah J. McCarty, and the petitioner, Mark S. McCarty, were divorced by order of this court dated July 26, 1983.

2. Pursuant to the Divorce Decree, the petitioner was ordered to pay the respondent alimony of $45 per week commencing on July 26, 1983.

3. Some time in early 1983, prior to the entry of the final decree in divorce, respondent entered into

a relationship with one Charles Wertman. It is this relationship which petitioner alleges constituted cohabitation under the Divorce Code.

4. Charles Wertman was divorced and had visitation rights with his children from a prior marriage.

5. Some time in early 1983, respondent began to spend weekends (typically Friday through Sunday evening) and weekday mornings with Wertman at his trailer.

6. Respondent continued to maintain her parents' home as her mailing address. It was here that her son resided at all times. Also, respondent slept at her parents' home from Monday through Thursday evenings.

7. When respondent stayed at Wertman's trailer on weekends, she would engage in sexual relations with him.

8. On weekdays, after her son went to school, respondent would visit Wertman at the trailer. When his children were not there (the typical situation) they would engage in sexual relations.

9. On weekdays respondent and Wertman were only able to see each other in the morning because they worked different shifts. She began work in the morning and he began work in late afternoon.

10. Respondent and Wertman intended to be married and announced their engagement on Thanksgiving of 1983. This engagement was broken off at the end of December, 1983, whereupon respondent became engaged to one Charles Curry.

11. In August, 1983, respondent and Wertman established a joint checking account. The major part of the funds placed in this account ($3500 of a total of $4100) was obtained by respondent through an equitable distribution award.

12. The money in the account was used for her car payment, their wedding rings, a microwave oven, which was used by Wertman in his trailer, and expenses.

13. Wertman typically paid the bills associated with the trailer (mortgage, electric, etc.). However, he would on occasion use the money from the joint account for these bills.

14. Some of the personal property which was taken from her marital home by respondent was moved directly to Wertman's trailer. These items of personal property included kitchen utensils, dishes and appliances.

15. When respondent was in the company of Wertman's children, she acted as a mother to them. This activity included playing games with the children, helping them to bed in the evening and getting them out of bed in the morning, picking up after the children and helping to cook meals for the children and helping them with their school work. Respondent and Wertman spoke of seeking custody of the children after they were married.

16. Respondent and Wertman used each other's automobile. Before she purchased her automobile she used his vehicle frequently without having to request permission.

17. On occasion respondent, Wertman and sometimes the children would go out to eat together.

18. Respondent kept various articles of clothing at Wertman's trailer. These included dresses, pants and a robe. Sometimes she did laundry at the trailer.

19. Respondent is not a member of Wertman's immediate family.

## DISCUSSION

The issue before the court is whether the conduct of plaintiff amounted to cohabitation which would bar her from receiving alimony. Section 507 of the Divorce Code, Act of April 2, 1980, P.L. 63, 23 P.S. §101 et seq., provides as follows:

No petitioner shall be entitled to receive any award of alimony where such petitioner has entered into cohabitation with a person of the opposite sex who is not a member of the petitioner's immediate family within the degrees of consanguinity subsequent to the divorce pursuant to which alimony is being sought.

The appellate courts of the Commonwealth have yet to define the term "cohabitation" as it is used in Divorce Code §507. However, this court has had an occasion to consider the precise issue presented sub judice. In West v. West, 80-3713 (Opinion of March 22, 1983) we refused to terminate alimony finding that there were too few of what we termed "incidents of cohabitation" to bring the situation within Divorce Code §507. There the respondent and her boyfriend slept together and engaged in sexual relations on weekends. To do so, either respondent had to drive to New Jersey where her boyfriend lived, or he had to drive to Williamsport where respondent lived. Also, every second weekend respondent would wash her boyfriend's clothes. These were the only incidents of cohabitation. We determined that the legislature did not intend alimony to terminate simply because a person engaged in sexual relations on a regular basis with a member of the opposite sex.

Respondent argues that the only time cohabitation can be deemed to have occurred is "when two people take up housekeeping with each other," i.e. when they are living together in the same house.

However, it is clear that the definition of cohabitation under the Divorce Code is broader than the respondent contends. In West at pages 4 and 5 we stated:

[i]n its search for incidents of cohabitation the court must consider many factors. The following are some examples. The court may consider the financial arrangements of the parties. Did the parties share expenses? Did one party support the other, in whole or in part? Did they use each other's charge accounts or establish joint bank accounts? The court may inquire into their personal relationships. Did they engage in sexual relations? Were their household duties shared? Did they develop a circle of mutual friends? How did they explain their relationship to neighbors, family, friends or acquaintances and how did those people view the relationship? Where and in what manner did the parties spend their vacations? Further, the Court may inquire as to the use of either party of the property of the other. What address did each party use? Did each party have access (keys etc.) to the residence alleged to be the place of cohabitation? Did each maintain clothing, toilet articles or other items at a common residence? Did they share automobiles or other personal property? Finally, what was the attitude or relationship of each toward the children of the other and the children's attitude toward each of the parties?

In considering the above, it is clear that although respondent and Charles Wertman were not living with each other at all times, there are considerably more incidents of cohabitation in the present case than we found in West v. West. Here, respondent and Wertman engaged in sex regularly on both weekends and weekdays. She did not sleep with Wertman on weeknights only because of their dif-

ferent work schedules. As the court's findings of fact indicate, respondent and Wertman shared expenses and household duties to an extent. They intended to be married, announced this intent and, along with Wertman's children, acted as a family for much of the period of their relationship. A joint bank account was established. Use of automobiles was shared. Wertman's children thought of respondent as a mother and in all respects she acted as their mother. Finally, respondent transferred many of her household appliances to Wertman's trailer and she maintained a wardrobe at Wertman's trailer.

In short, the court concludes that petitioner has established that respondent was cohabiting with Charles Wertman. Pursuant to Divorce Code §507 respondent is not entitled to receive alimony. The court will terminate any responsibility of petitioner to pay alimony.

## ORDER

And now, February 20, 1984, the rule to show cause issued November 22, 1983, is made absolute, and it is ordered and directed that petitioner's responsibility to pay any alimony under the court's order of July 26, 1983, is hereby terminated. This order applies to any and all future payments of alimony and any and all arrearages of alimony.